

# NUMBER 13-21-00144-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF T.M.R., A CHILD

---

### On appeal from the 36th District Court
### of Bee County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Hinojosa and Silva
### Memorandum Opinion by Chief Justice Contreras

This appeal concerns the trial court's order terminating the parental rights of appellant J.R.R., the biological father of T.M.R., a child born in 2015.[1] By three issues, J.R.R. argues: (1) the trial court committed reversible error by not appointing an amicus attorney or attorney ad litem to represent the legal interests of the child; (2) the evidence was legally and factually insufficient to support grounds for termination under part (E) of

---

[1] We refer to the child and his family members by their initials in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2).

Texas Family Code § 161.001(b)(1); and (3) the evidence was legally and factually insufficient to support a finding that termination was in the best interests of the child. We affirm.

## I. BACKGROUND

The original petition in this case was filed on September 26, 2018, by appellees R.A., the child's mother; and J.J.A., her then-fiancé. The petition sought termination of J.R.R.'s parental rights and for J.J.A. to adopt the child. Appellees argued that both actions were in the best interest of T.M.R.; nevertheless, the petition specifically requested that an attorney ad litem be appointed "to provide legal services for the child." J.R.R., pro se, filed a letter with the trial court stating that he received the petition but was presently incarcerated and would be requesting a bench warrant or for the termination trial to be postponed until his release. J.R.R. did not request that an attorney ad litem be appointed for the child.

At trial on April 23, 2021, the three parties to the suit appeared in person and were represented by counsel. The parties were the only witnesses to testify. J.R.R., called to testify by appellees' counsel, stated that he is forty-three years old and works in electrical and air conditioning service. He was imprisoned in 2016 for theft of property and released in May of 2020; however, he was arrested again while on parole in February of 2021 on methamphetamine manufacturing, delivery, and possession charges and was in jail at the time of trial.[2] He stated he has had several other convictions, including two for methamphetamine possession; however, he denied that he has used methamphetamines

---

[2] J.R.R. agreed that the offense for which he was arrested in February 2021 was a first-degree felony. When appellees' counsel questioned J.R.R. about the details of the arrest, J.R.R. asserted his Fifth Amendment right against self-incrimination and declined to answer.

since he went to prison. He also denied that he had any gang affiliation. J.R.R. testified that he received several vocational certificates and completed a parenting program and cognitive intervention program while incarcerated.

J.R.R. said he last saw T.M.R. when the child was around four months old.[3] When asked whether he ever assaulted R.A., J.R.R. stated: "I hit her, she hit me. It was just a toxic relationship, we were both on drugs and this was back and forth." Photos of J.R.R. holding T.M.R. as an infant were entered into evidence. On cross-examination by his own counsel, J.R.R. agreed that R.A. used methamphetamines with him, including while R.A. was pregnant. He clarified that, although he was then incarcerated on methamphetamine charges, he had not been indicted. He stated that, due to a "blue warrant"[4] expiring in June of 2021, he will be released from jail at that time if he does not have any pending indictments. J.R.R. stated that, before he was imprisoned in 2016, he provided cash support and baby supplies to R.A., and he visited with T.M.R. "many times" at a motel or at R.A.'s house.

R.A. testified that J.R.R. last provided cash or supplies to her "[w]ithin the first few months" of T.M.R.'s life, and that he last saw T.M.R. when the child was about four months old. R.A. agreed that she was "involved in" the same offense for which J.R.R. is currently on parole. She explained that she and J.R.R. were both arrested in a "raid" on a drug house in 2014, while she was on probation, and she learned she was pregnant with T.M.R. while she was in jail. She gave birth shortly after being released. On the day of T.M.R.'s birth, J.R.R.'s mother posted bond for J.R.R. and brought him to the hospital.

---

[3] J.R.R. said he has four other children and "one on the way" with different mothers.

[4] A "blue warrant" is a warrant issued by the parole division for the arrest of a person suspected of violating parole. *See Dean v. State*, 900 S.W.2d 367, 367 (Tex. App.—Texarkana 1995, no pet.).

3

R.A. testified that she later asked J.R.R. to leave her mother's house, where she was living, because he was in possession of methamphetamine.

R.A. stated that she has had no new arrests since T.M.R.'s birth, but she opined that J.R.R.'s behavior has not changed. She recounted that, on August 31, 2015, J.R.R. came to her mother's house and took R.A. and the child shopping for baby supplies in his work truck. However, before they reached the store, R.A. observed "[p]araphernalia on the floorboard" and she decided to get out of the truck and return home with the child. When R.A. and T.M.R. exited the truck, J.R.R. "turned the truck around" and "chased" her down the road while she was holding the child. She said J.R.R. then "grabbed" her by the hair, hit her on the head, and "drug us down the side of the truck." She filed a police report and did not contact J.R.R. again.

R.A. stated she has known J.J.A. since high school and they have been married for two years. She agreed that T.M.R. treats J.J.A. like he is his father, and J.J.A. treats T.M.R. the same as his own son. R.A. opined that J.J.A. has better parenting abilities than J.R.R. J.J.A. testified that, while R.A. does not have employment outside of the home, he has been employed at a ranch for around six years and has taken care of T.M.R. since the child was two years old. Photos of J.J.A. with T.M.R. were entered into evidence.

On cross-examination, R.A. conceded that she had used methamphetamines with J.R.R. prior to T.M.R.'s birth. She agreed that this was a violation of her probation and that she probably lied to her probation officer about it. She also agreed that, though her household was chaotic and unstable when she was with J.R.R., she "participated in" the chaos as well and it would be "unfair to blame everything" on J.R.R.

In rebuttal testimony, J.R.R. denied chasing R.A. down in a truck or bringing drugs

4

to R.A.'s mother's house. He explained that on August 31, 2015, he was taking R.A. to San Antonio to see his older son in the hospital. He and R.A. were "fighting" when R.A. "jumped out [of] the truck." He said he told R.A. to get back in the truck "because it's too far to be walking with my baby out in the sun," but R.A. refused. J.R.R. testified that, during this event, a "substance" which he suspected to be drugs fell out of R.A.'s purse.

The trial court found that (1) J.R.R. engaged in conduct or knowingly placed T.M.R. with persons who engaged in conduct which endangered T.M.R.'s physical or emotional well-being, (2) termination of J.R.R.'s parental rights is in the child's best interests, and (3) adoption of T.M.R. by J.J.A. is in the child's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b). The trial court signed a judgment, in accordance with these findings, terminating J.R.R.'s parental rights and stating in part:

> The Court finds that no attorney ad litem or amicus attorney was required to be appointed for the child, as [R.A.] and [J.J.A.]'s interests were not in conflict with the best interests of the child and the child's interests are able to be adequately represented by [R.A.] and [J.J.A.].

This appeal followed.

## II. DISCUSSION

### A. Appointment of Amicus Attorney or Attorney Ad Litem

#### 1. Applicable Law and Standard of Review

By his first issue, J.R.R. contends the trial court committed reversible error by failing to appoint an amicus attorney or attorney ad litem under Texas Family Code § 107.021. That statute states:

> In a suit requesting termination of the parent-child relationship that is not filed by a governmental entity, the court shall, unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests, appoint one of the following:

5

>    (1) an amicus attorney; or

>    (2) an attorney ad litem.

TEX. FAM. CODE ANN. § 107.021(a-1). The court may make an appointment under this statute "only if the court finds that the appointment is necessary to ensure the determination of the best interests of the child, unless the appointment is otherwise required by [the family code]." *Id.* § 107.021(b)(2).

We review a trial court's determination under § 107.021 for abuse of discretion. *See In re B.L.D.*, 113 S.W.3d 340, 347 (Tex. 2003). To demonstrate an abuse of discretion, the appellant must show that the trial court acted in an arbitrary or unreasonable manner, without reference to guiding principles of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The trial court does not abuse its discretion if there is "some evidence of a substantive and probative character" to support its decision. *Gray v. Shook*, 329 S.W.3d 186, 195 (Tex. App.— Corpus Christi–Edinburg 2010), *aff'd in part, rev'd in part on other grounds*, 381 S.W.3d 540 (Tex. 2012) (per curiam); *Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.); *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.) (noting that "[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record").[5]

---

[5] J.R.R. did not request the appointment of an attorney for T.M.R. under § 107.021 at any time in the trial court. Texas appellate courts differ as to whether alleged error in failing to make an appointment under § 107.021 must be preserved by timely request or objection at trial. *Compare In re D.M.O.*, No. 04-17-00290-CV, 2018 WL 1402030, at *2 (Tex. App.—San Antonio Mar. 21, 2018, pet. denied) (mem. op.) (holding the failure to make appointment under § 107.021 may be raised for the first time on appeal), *In re K.M.M.*, 326 S.W.3d 714, 715 (Tex. App.—Amarillo 2010, no pet.) (same), *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.—Austin 1983, no pet.) (same under predecessor statute), *with In re A.E.J.*, No. 05-20-00340-CV, 2020 WL 5107293, at *13 (Tex. App.—Dallas Aug. 31, 2020, pet. denied) (mem. op.) ("We conclude

### 2. Analysis

In support of his first issue, J.R.R. cites case law providing that, when one parent seeks termination of the other's parental rights, it is unusual that one party can adequately protect the interests of the child. *See In re K.M.M.*, 326 S.W.3d 714, 715 (Tex. App.—Amarillo 2010, no pet.) ("[W]here parents are adversaries in a suit to terminate one parent's rights, the trial court can seldom find that one party adequately represents the interests of the children involved or that their interests are not adverse."); *Chapman v. Chapman*, 852 S.W.2d 101, 102 (Tex. App.—Waco 1993, no writ) (concluding that neither parent "could adequately represent the interests of the child because each party was strongly advocating his or her own interests" and noting that "[i]t would be a rare situation where the trial court could properly find that a guardian or attorney ad litem is not needed when one parent is trying to terminate the other parent's parental rights"); *Barfield v. White*, 647 S.W.2d 407, 409 (Tex. App.—Austin 1983, no writ) ("We think it would be a rare situation where the trial court can properly find that an attorney or guardian ad litem is not needed when one parent is trying to terminate the other parent's parental rights."); *see also Arnold v. Caillier*, 628 S.W.2d 468, 469 (Tex. App.—Beaumont 1981, no writ) (finding failure to appoint attorney for child was error where "[t]he parties were, as is customary in such litigation, very partisan and the mother was interested in removing the legal barrier to the adoption of the child by her husband"); *Sisk v. Duck*, 593 S.W.2d 416, 417 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (finding failure to appoint attorney for child was error where "[e]ach party was strongly advocating its own position"

---

father waived any complaint regarding the trial court's failure to appoint an ad litem by failing to raise it prior to trial, and that by following our error preservation rules, we do not deprive father of any due process right."). For purposes of this opinion, we assume but do not decide that the issue may be raised for the first time on appeal.

and "the interests of the child were seemingly secondary to the interests of the parties"). Indeed, "[t]hese cases by their very nature require the father and mother to litigate their personal interests," and without an appointment of an amicus or ad litem, "[t]here is no party in this type of litigation whose primary duty is to protect the child's interests." *Barfield*, 647 S.W.2d at 409.

That said, by leaving appointment of an amicus or ad litem up to the trial court's discretion in private termination cases—in contrast to government-initiated termination cases, where such appointment is mandatory, *see* TEX. FAM. CODE ANN. § 107.012—the legislature has implicitly determined that one parent may adequately represent the interests of the child in such cases, despite the inherently adversarial nature of the proceedings.[6]

J.R.R. argues that "[t]he parties' interests were clearly adversarial" to each other given their testimony about their tumultuous relationship and their conflicting accounts of the August 31, 2015 incident. J.R.R. argues that "R.A.'s primary goal in filing this case was . . . so her husband, J.J.A.[,] could adopt." That may be true, but that does not mean the trial court necessarily abused its discretion in determining that appointment of an attorney under § 107.021 was unnecessary. Here, the record reflects that R.A. and J.J.A. sought termination of J.R.R.'s parental rights and adoption by J.J.A. primarily because

---

[6] The dissent suggests that appointment of an attorney ad litem or amicus attorney is "mandatory" in private termination cases under family code § 107.021(a-1). It is not. *See* TEX. FAM. CODE ANN. § 107.021 (entitled "*Discretionary* Appointments" (emphasis added)); *cf. id.* § 107.102 (entitled "Mandatory Appointment of Attorney Ad Litem For Child" but applicable only to termination suits brought by a governmental entity); *see also Mandatory*, MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/mandatory (last visited Oct. 22, 2021) (defining "mandatory" as "required by a law or rule"). The title of § 107.021 is consistent with its text, which states that the court "shall" make an appointment "unless" it finds, in the exercise of its discretion, that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests. TEX. FAM. CODE ANN. § 107.021(a-1) (emphasis added).

they believed those actions to be in the best interests of T.M.R. The evidence established that J.R.R. has been incarcerated for the majority of T.M.R.'s life, and that he was jailed on felony methamphetamine charges at the time of trial. R.A. testified that, on August 31, 2015, J.R.R. chased her with his truck, grabbed her, and hit her while she was holding the child. She testified that T.M.R. considers J.J.A. to be his father and that J.J.A. has better parenting skills than J.R.R. The foregoing constitutes "some evidence of a substantive and probative character" to support the trial court's decision that R.A. and J.J.A. adequately represented T.M.R.'s interests in this case and that their interests did not conflict with those of the child. *See* TEX. FAM. CODE ANN. § 107.021(a-1); *Gray*, 329 S.W.3d at 195.[7]

J.R.R. emphasizes that R.A. conceded at trial that she had used methamphetamine prior to T.M.R.'s birth and was "involved" in the 2014 incident which

---

[7] We note that, in determining whether to make an appointment under § 107.021, the court must:

(A)     give due consideration to the ability of the parties to pay reasonable fees to the appointee; and

(B)     balance the child's interests against the cost to the parties that would result from an appointment by taking into consideration the cost of available alternatives for resolving issues without making an appointment[.]

TEX. FAM. CODE ANN. § 107.021(b)(1). Here, the only party who is gainfully employed is J.J.A., who works as a ranch hand. Therefore, the record established that the parties did not have a significant ability to pay reasonable fees to an amicus attorney or attorney ad litem. Appellees argue that this supports the trial court's decision not to appoint an attorney for the child under § 107.021. *See In re T.L.W.*, No. 12-10-00401-CV, 2012 WL 1142475, at *4 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.) (considering appellant's indigence in concluding that the court did not err in declining to appoint an attorney ad litem for the children); *but see In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *6 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.) (stating that, because "the trial court specifically found that an appointment was unnecessary," "whether the parties could pay an ad litem's fees never became relevant" under § 107.021). However, though the family code generally requires parents to pay the fees of an attorney appointed under § 107.021, indigent parents are exempt from that requirement. *See* TEX. FAM. CODE ANN. § 107.015(a) ("An attorney appointed under this chapter to serve as an attorney ad litem for a child, an attorney in the dual role, or an attorney ad litem for a parent is entitled to reasonable fees and expenses in the amount set by the court *to be paid by the parents of the child unless the parents are indigent*." (Emphasis added)). Thus, here, there is arguably no "cost to the parties that would result from an appointment." *See id.* § 107.021(b)(1)(B).

resulted in the arrests of both J.J.R. and R.A. However, R.A. also testified that she has not used methamphetamine and has not been arrested since T.M.R.'s birth. Considering the entire record, we cannot conclude that the trial court abused its discretion by declining to appoint an amicus attorney or attorney ad litem for the child in this case. *See* TEX. FAM. CODE ANN. § 107.021(a-1); *see also In re B.W.*, No. 02-19-00009-CV, 2019 WL 2041808, at *7 (Tex. App.—Fort Worth May 9, 2019, no pet.) (mem. op.) (finding no error in failure to appoint attorney to represent children's interests where the "primary interest of Mother . . . was to protect [the child] from Father" and "the trial court had previously found that Father had a history or pattern of committing family violence"); *In re C.A.P.*, No. 04-12-00553-CV, 2013 WL 749825, at *2 (Tex. App.—San Antonio Feb. 27, 2013, pet. denied) (mem. op.) (same where mother testified "I'm here because [the child at issue] is my daughter and I'm looking out for her best interest"); *In re T.L.W.*, No. 12-10-00401-CV, 2012 WL 1142475, at *3 (Tex. App.—Tyler Mar. 30, 2012, no pet.) (mem. op.) (same where "the record reflects that [mother]'s primary interest was her children, and includes her testimony regarding the effect [father]'s frequent incarcerations and absence had on the children . . . and the stability and happiness of the children's present home lives"); *In re R.J.C.*, No. 04-09-00106-CV, 2010 WL 816188, at *3 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (mem. op.) (same where "the record reflects the primary interest of [mother] was to protect [the child] from [father]" and father did not state how the trial court abused its discretion); *cf. Chapman*, 852 S.W.2d at 102 (concluding that neither parent "could adequately represent the interests of the child because each party was strongly advocating his or her own interests"); *Nichols v. Nichols*, 803 S.W.2d 484, 485 (Tex. App.—El Paso 1991, no writ) (finding failure to appoint attorney for child was error where

mother did not appear and father "could not represent the child's interests since by seeking a termination of the relationship and his obligation to support her, his interests were clearly adverse to hers").

We overrule J.J.R.'s first issue.

## B.      Sufficiency of the Evidence

### 1.      Applicable Law and Standard of Review

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi—Edinburg 2010, no pet.); *see In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring) ("Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases."). Accordingly, termination proceedings must be strictly scrutinized. *In re K.M.L.*, 443 S.W.3d at 112.

A trial court may order termination of the parent-child relationship only if it finds by clear and convincing evidence that: (1) the parent committed an act or omission described in family code § 161.001(b)(1); and (2) termination is in the best interest of the child. TEX. FAM. CODE. ANN. § 161.001(b)(1), (2). The "clear and convincing" standard falls between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the

truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

Evidence is legally sufficient to support termination if a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). In conducting a legal sufficiency review, we view all the evidence in the light most favorable to the finding and we consider any undisputed contrary evidence. *Id.* at 631; *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) ("Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence."). Evidence is factually sufficient to support termination if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true. *In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266.

### 2. Endangerment

By his second issue, J.R.R. challenges the sufficiency of the evidence to support the trial court's finding that he "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of [T.M.R.]." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

"Endanger" means "to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Danger to a child need not be established as an independent proposition and may be inferred from parental

12

misconduct. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 616–17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The relevant inquiry is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being. *Id.* Termination under part (E) "requires a voluntary, deliberate, and conscious course of conduct by the parent" and must be based on more than a single act or omission. *See In re P.W.*, 579 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Ruiz v. Tex. Dep't of Family & Protective Servs.*, 212 S.W.3d 804, 818 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The evidence adduced at trial established that J.R.R. engaged in methamphetamine use both before and after T.M.R.'s birth. Persistent illegal drug use may support a finding of an endangering course of conduct under part (E). *See In re B.M.S.*, 581 S.W.3d 911, 917 (Tex. App.—El Paso 2019, no pet.); *Walker*, 312 S.W.3d at 617 (reasoning that a parent's illegal drug use may support termination under part (E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned"); *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.) (noting that the fact-finder can give "great weight" to the "significant factor" of drug-related conduct by a parent). Additionally, J.R.R. was incarcerated for most of T.M.R.'s life, was in jail at the time of trial, and has multiple prior convictions on methamphetamine-related charges. *See In re L.D.C.*, 622 S.W.3d 63, 71 (Tex. App.—El Paso 2020, no pet.) (noting that "conduct that subjects a child to the probability of abandonment" supports an endangerment finding); *Walker*, 312 S.W.3d at 617 ("Conduct that routinely subjects a child to the probability that the child will be left alone because a parent is jailed endangers both the physical and emotional well-being of the child.").

Finally, R.A. and J.R.R. both testified that J.R.R. committed acts of domestic violence against R.A. while the two were in a relationship, though R.A. conceded that she contributed to the violence and J.R.R. was not solely to blame. *See In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment."). R.A. also testified that J.R.R. chased her with his truck, grabbed her, and hit her while she was holding the child.

Considering all of this evidence in the light most favorable to the judgment, we conclude that a reasonable trier of fact could have formed a firm belief or conviction, based on clear and convincing evidence, that J.R.R. engaged in a course of conduct which endangered T.M.R.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005). Further, the evidence to the contrary was not so significant as to preclude such a finding. *See In re J.F.C.*, 96 S.W.3d at 266. We overrule J.R.R.'s second issue.

### 3. Best Interests

By his third issue, J.R.R. challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in T.M.R.'s best interests.

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Factors that we consider in determining whether termination of parental rights is in a child's best interest include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties

14

seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking termination is not required to prove all nine *Holley* factors; in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 19, 25, 27 (Tex. 2002).

The evidence in this case did not address all of the *Holley* factors—in particular, there is nothing in the record regarding T.M.R.'s desires or indicating that he has any specific emotional or physical needs beyond those of a typical six-year-old child. However, the evidence set forth above established that J.R.R. has repeatedly engaged in criminal behavior and that the child's current placement is stable. Contrary evidence includes J.R.R.'s completion of a parenting program while in prison, and his uncontroverted testimony that he visited with the child regularly before he was imprisoned in 2016.

A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *In re G.A.C.*, 499 S.W.3d 138, 141 (Tex. App.—Amarillo 2016, pet. denied); *In re K.C.*, 219 S.W.3d at 931; *see* TEX. FAM. CODE ANN. § 263.307(a) (providing that, in considering whether parents are willing and able to provide a safe environment, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest"). A factfinder may consider the consequences of failure to terminate

parental rights and may also consider that the child's best interest may be served by termination so that adoption may occur. *See In re K.C.*, 219 S.W.3d at 931. The evidence in this case shows that J.R.R. was unable to provide a stable environment for T.M.R. and therefore supports the trial court's best interest finding.

Considering all the evidence in the light most favorable to the judgment, we conclude that a reasonable trier of fact could have formed a firm belief or conviction, based on clear and convincing evidence, that termination of J.R.R.'s parental rights was in the best interest of T.M.R. *See In re J.L.*, 163 S.W.3d at 85. Further, the evidence to the contrary was not so significant as to preclude such a finding. *See In re J.F.C.*, 96 S.W.3d at 266. We overrule J.R.R.'s third issue on appeal.

### III.     CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Dissenting Memorandum Opinion by Justice Hinojosa.

Delivered and filed on the
28th day of October, 2021.